```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
DHL GLOBAL FORWARDING                                       :
MANAGEMENT LATIN AMERICA, INC.                              :
et al.,                                                     :
                                                            :
                           Plaintiffs,                      :     13-cv-8218 (KBF)
                                                            :
              -v-                                           :     OPINION & ORDER
                                                            :
PFIZER, INC. et al.,                                        :
                                                            :
                           Defendants.                      :
                                                            :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: OCT 1 4 2014

KATHERINE B. FORREST, District Judge:

On November 18, 2013, plaintiffs DHL Global Forwarding Management Latin America, Inc. ("DHL Global") and DHL Logistics Brazil Ltda ("DHL Logistics") filed this action against Itau Seguros, S.A. ("Itau"), Pfizer, Inc. ("Pfizer"), Pfizer Global Trading ("Pfizer Global"), and Laboratorios Pfizer Ltda ("Pfizer Brazil," and collectively with Pfizer and Pfizer Global, "Pfizer defendants"), seeking a declaratory judgment regarding the extent of plaintiffs' liability for a partially rejected shipment of pharmaceutical goods. (ECF No. 1 ("Compl.").)[1] Itau and the Pfizer defendants filed separate motions to dismiss the Complaint on June 6, 2014 and July 2, 2014, respectively. (ECF Nos. 29, 50.)

For the reasons set forth below, both motions to dismiss are GRANTED.

---

[1] Plaintiffs also seek "[a] determination of the application of The Montreal Convention; and/or the terms and conditions of the service agreement and the air waybills; as well as their requisite liability limits." (Compl. ¶ 6.)

I.    BACKGROUND

The basic factual allegations in this case are simple: Plaintiffs were hired to transport pharmaceutical goods from point A to point B. When the shipment arrived at point B, it was partially rejected as damaged. Facing a claim for damages, plaintiffs commenced this action seeking a declaratory judgment regarding the extent of their liability for the partially rejected shipment.

One important question in this case is whether plaintiffs improperly named some of the Pfizer entities as defendants. The Complaint repeatedly makes broad allegations about "Pfizer" or "the Pfizer Defendants" without referring specifically to particular defendants in this action. Where necessary, the Court supplements the allegations in the Complaint with facts from documents either referenced in the Complaint or relied upon in framing the Complaint. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("[W]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint[,] the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)) (internal quotation marks omitted)).

In 2002, "Danzas, AEI Intercontinental" ("Danzas")[2] and Pfizer, Inc. signed a "Master Services Agreement"[3] for the provision of logistics services, including international air carriage services, to Pfizer, Inc. and its affiliates, "including the Defendants herein." (Compl. ¶ 10.) According to the Complaint, in 2011, "the Pfizer Defendants" engaged plaintiffs to transport pharmaceutical goods to Brazil, and "DGF issued Airwaybill #2BL1193 naming the Pfizer Defendants as parties thereto." (Id. ¶ 11.) Despite the Complaint's broad reference to "the Pfizer Defendants," Air Waybill # 2BL1193 (the "Air Waybill") actually was issued to Pfizer Global as shipper and Pfizer Brazil as consignee. (See ECF No. 31-1.) The Air Waybill does not reference any other Pfizer entity; in particular, it does not reference Pfizer, Inc. (See id.)

The Complaint alleges that when the cargo arrived, "the ultimate consignee, Pfizer rejected 15 of the subject 33 drums of Sertraline claiming that it was not possible to guarantee the integrity of the product for pharmaceutical utilization."[4] (Compl. ¶ 13.) The Complaint further alleges that "Pfizer has interposed a claim for full value (in excess of $1.6 million dollars) against the DGF Plaintiffs." (Id. ¶ 14.)

---

[2] There is ambiguity regarding which plaintiffs, if any, were formerly named "Danzas." At one point, the Complaint states that Danzas is now known as "DGF Global Forwarding." (Compl. ¶ 10.) But DGF Global Forwarding is not a party to this action. Elsewhere, the Complaint associates Danzas with "DGF" (see id. ¶ 4 n.2), which is defined as a reference to DHL Global in one part of the Complaint (see id. ¶ 4) and as a reference to both plaintiffs in a different part of the Complaint (see Compl. COMES NOW Cl.).
[3] This document is actually called the "Global Logistics Supplier Master Agreement." (See ECF No. 52-2.)
[4] Despite the Complaint's vague reference to the consignee as "Pfizer" (see Compl. ¶ 13), it is clear from the Air Waybill that the consignee was, in fact, Pfizer Brazil.

Finally, the Complaint alleges that Itau "has or will become subrogated to the rights of Pfizer upon payment or settlement of this loss." (Id. ¶ 6.)

The subrogation document— entitled "Authorization of Indemnification Credit and Discharge of Claim"—shows that Pfizer Brazil, the consignee that received the allegedly damaged shipment, submitted a claim for the loss to Itau, its insurer, on January 17, 2012. (See ECF No. 31-2.) Itau paid the claim to Pfizer Brazil in the amount of $1,330,320.58, and, in exchange, Pfizer Brazil subrogated its rights to Itau to recover the loss. (Id.) Pfizer Brazil explicitly surrendered all rights "to contest . . . in the present and in the future, in court or elsewhere, with respect to the event described above, the Insurer being subrogated in all of the rights and actions that help us." (Id.)

On November 18, 2013, plaintiffs commenced this action against Pfizer, Inc., Pfizer Global, Pfizer Brazil, and Itau, seeking a declaratory judgment determining the extent of their liability for the loss of the subject cargo and the application of the Montreal Convention, the Master Services Agreement, and the issued air waybills.[5] (Compl. WHEREFORE Cl. ¶¶ a, b.) According to the Complaint, Itau and Pfizer Brazil are foreign entities with offices in Brazil (id. ¶ 6, 9), Pfizer Global is a foreign corporation with offices in Ireland (id. ¶ 8), and Pfizer, Inc. is a Delaware

---

[5] The Complaint alleges that, in addition to Air Waybill #2BL1193, another air waybill was issued in connection with the shipment at issue. Specifically, the Complaint alleges that "DGF engaged the services of ABSA Aerolinhas Brasileiras to physically transport the cargo to Sao Paolo, Brazil" and that "ABSA Aerolinhas Brasileiras issued an air waybill 549-21200955 naming DHL Global Forwarding as the shipper and DHL Logistics Brazil Ltda. as the consignee." (Compl. ¶ 12.) It is telling that the Complaint specifies the shipper and consignee for this air waybill but does not do so for Air Waybill #2BL1193.

4

corporation with its principal place of business in New York (id. ¶ 7). On November 25 and 26, 2013, plaintiffs sent the Summons and Complaint to all of the defendants via U.S. Certified Mail and/or Priority Mail Express International.[6] (See ECF No. 51.)

Itau and the Pfizer defendants filed separate motions to dismiss the Complaint on June 6, 2014 and July 2, 2014, respectively.[7] (ECF Nos. 29, 50.) These motions are the subject of this Opinion & Order.

II. LEGAL STANDARDS

A. Service of Process

Rule 12(b)(5) of the Federal Rules of Civil Procedure provides for dismissal of an action for insufficient service of process. Fed. R. Civ. P. 12(b)(5); see also Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987) ("[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." (quoting Miss. Publ'g Corp. v. Murphree, 326 U.S. 438, 444–45 (1946)) (internal quotation marks omitted)); Koulkina v. City of New York, 559 F. Supp. 2d 300, 310 n.9 (S.D.N.Y. 2008) ("Motions challenging the sufficiency of service of process are properly made under Rule 12(b)(5).").

---

[6] Plaintiffs submitted copies of receipts and USPS tracking information as proof of service eight months after the mailings. (See ECF No. 51.)
[7] On June 11, 2014, plaintiffs filed a motion for partial summary judgment. (ECF No. 38.) The Court granted defendants' request to adjourn briefing of that motion pending resolution of the motions to dismiss. (ECF No. 47.)

"Once a defendant raises a challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy." Preston v. New York, 223 F. Supp. 2d 452, 466 (S.D.N.Y. 2002), aff'd sub nom. Preston v. Quinn, 87 F. App'x 221 (2d Cir. 2004). In assessing such challenges, a court "must look to matters outside the complaint." Mende v. Milestone Tech., Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) (quoting Darden v. DaimlerChrysler N. Am. Holding Corp., 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002)).

Rule 4(h)(2) of the Federal Rules of Civil Procedure requires that international service on a foreign corporation be made "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h). In turn, Rule 4(f) provides that service on an individual in a foreign country may be effected:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>>
>> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>>
>> (C) unless prohibited by the foreign country's law, by:
>>
>>> (i) delivering a copy of the summons and of the complaint to the individual personally; or

> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

Further, Rule 4(m) establishes a 120-day time limit for service of process:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

Fed. R. Civ. P. 4(m).

While Rule 4(m) contains an exception for service in a foreign country, the Second Circuit has held that exception inapplicable where a plaintiff does not attempt to serve process on a foreign defendant in an authorized manner. See DEF v. ABC, 366 F. App'x 250, 253 (2d Cir. 2010) ("We have previously held inapplicable the foreign country exception to Federal Rule of Civil Procedure 4(m)'s 120-day time limit for service where a party did not attempt service within the 120-day limit and 'ha[d] not exactly bent over backward to effect service.'" (quoting Montalbano v. Easco Hand Tools, Inc., 766 F.2d 737, 740 (2d Cir. 1985))); see also In re Crysen/Montenay Energy Co., 166 B.R. 546, 553 (S.D.N.Y. 1994) ("The mere fact that Congress exempted foreign service from the 120-day requirement, does not give litigants an unlimited time in which to complete service.").

B.      Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "the plaintiff must provide the grounds upon which [its] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Alt. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In applying that standard, the court accepts as true all well-pleaded factual allegations, but does not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." Id. If the court can infer no more than "the mere possibility of misconduct" from the well-pleaded factual allegations, dismissal is appropriate. Id. at 679.

On a motion to dismiss, a court may properly consider documents attached to or referenced in the complaint, or relied upon by the plaintiff in framing the complaint. See Chambers, 282 F.3d at 153; DiFolco, 622 F.3d at 111. "The classic examples of documents that may be considered on a motion to dismiss even though the plaintiff does not physically attach them to the complaint are the contracts that underlie the claims in suit . . . ." Jasper v. Sony Music Entm't, Inc., 378 F. Supp. 2d

8

334, 338 (S.D.N.Y. 2005). "The Court need not accept as true any allegations that are contradicted by documents deemed to be part of the complaint, or materials amenable to judicial notice." In re Yukos Oil Co. Sec. Litig., No. 04 Civ. 5243(WHP), 2006 WL 3026024, at *12 (S.D.N.Y. Oct. 25, 2006) (citing, inter alia, Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1092 (2d Cir. 1995)).

III. DISCUSSION

A. Pfizer Brazil and Itau

For the reasons set forth below, the Court dismisses the Complaint as to Pfizer Brazil and Itau pursuant to Rule 12(b)(5) for failure to serve these Brazilian defendants with the Summons and Complaint in an authorized manner.

An internationally agreed means of serving a Brazilian defendant is by letters rogatory, as provided by the Inter-American Convention on Letters Rogatory, Jan. 30, 1975, S. Treaty Doc. No. 98-27 (1984), 1438 U.N.T.S. 287, to which both United States and Brazil are signatories. See United States v. Barry Fischer Law Firm, LLC, No. 10 Civ. 7997 TPG, 2011 WL 31545, at *4 (S.D.N.Y. Jan. 5, 2011) ("The U.S. has determined, through discussions with the Brazilian government, that, pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1608, and the Inter-American Convention on Letters Rogatory, 1438 U.N.T.S. 287, the only mode of service in this case with respect to Brazil is to personally serve Brazil's Federal Counsel-General via letters rogatory."); Lykes Lines Ltd. LLC v. Bringer Corp., No. 04 Civ. 4460 RMBFM, 2007 WL 766170, at *4 (S.D.N.Y. Mar. 12, 2007) ("The parties do not dispute that 'Brazilian law requires that service of process by a

foreign party upon a party domiciled in Brazil must be made by means of letters rogatory.'" (quoting Alpha Omega Tech., Inc. v. PGM-Comercio E Participacoes Ltda., 93 CIV. 6257 (PKL), 1994 WL 37787, at *1 (S.D.N.Y. Feb. 9, 1994))).

Plaintiffs do not dispute that they served Itau and Pfizer Brazil by mail, not by letters rogatory. Rather, plaintiffs point out that "letters rogatory are not the exclusive means for serving process in signatory countries." (Memorandum of Law in Opposition to Motions to Dismiss ("Pls.' Resp.") at 11, ECF No. 52.) It is true that the Inter-American Convention may not foreclose service by means other than letters rogatory under subsections (f)(2) or (f)(3) of Rule 4. See, e.g., Kreimerman v. Casa Veerkamp, S.A. de C.V., 22 F.3d 634, 647 (5th Cir. 1994) ("[W]e conclude that the Convention does not preempt every other conceivable method of serving process on defendants residing in other signatory states."). However, serving process via certified mail without a prior motion to the Court does not satisfy any of the options presented under Rule 4.

Plaintiffs argue that "the court is permitted to authorize alternative service pursuant to Rule 4(f)(3) as long as such service satisfies due process and does not violate any international agreement." (Pls.' Resp. at 11.) This argument does not help plaintiffs. The method described in subsection (f)(3)—"by other means not prohibited by international agreement, as the court orders" (emphasis added)—was not utilized. This action has been pending since November of 2013, and plaintiffs have not applied to the Court for authorization to serve Pfizer Brazil and Itau by

mail.[8] Plaintiffs simply mailed the Summons and Complaint without attempting to use the letters rogatory process and without obtaining this Court's permission to use alternative means of service.[9]

The methods described in subsection (f)(2) either were not used or are inapplicable. The method listed in Rule 4(f)(2)(B)—"as the foreign authority directs in response to a letter rogatory or letter of request"—was not used, since plaintiffs never submitted letters rogatory or letters of request. Rule 4(f)(2)(C)(i) is not an available method when the foreign defendant is a corporation, see Fed. R. Civ. P. 4(h)(2), and, in any event, service by personal delivery was not attempted. Rule 4(f)(2)(C)(ii) does not apply because process was not addressed or sent by "the clerk." Finally, plaintiffs did not satisfy—nor do they contend that they have satisfied— Rule 4(f)(2)(A), which requires compliance with Brazilian law. See J.B. Custom, Inc. v. Amadeo Rossi, S.A., No. 1:10-cv-326, 2011 WL 2199704, at *6 (N.D. Ind. June 6, 2011) ("[E]xpert declarations, secondary sources, and cases all lead me to conclude that, under Rule 4(f)(2)(A), Brazil's 'law for service . . . in an action in its courts of general jurisdiction' requires that foreign complaints be served via letters

---

[8] Plaintiffs' opposition to the motions to dismiss is the first submission that requests authorization under Rule 4(f)(3).

[9] Plaintiffs' argument that "it is evidence that ITAU has been timely notified of the proceedings and has in no way been prejudiced by not receiving service through letters rogatory," (Pls.' Resp. at 12), overlooks that actual notice is insufficient to excuse a failure to properly serve. See Martin v. New York State Dep't of Mental Hygiene, 588 F.2d 371, 373 (2d Cir. 1978) ("A showing that the defendant has had actual notice of the lawsuit is not sufficient to bar a motion to dismiss under Rule 12(b)(2)."); Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. de C.V., 451 F. Supp. 2d 585, 589 (S.D.N.Y. 2006) ("[D]efective service [cannot] be ignored on the mere assertion that a defendant had 'actual notice.'").

rogatory and that, therefore, [plaintiff's] attempt to serve [defendants] by certified mail was ineffective.").

This lawsuit has been pending for almost a year, and plaintiffs have not made any attempt to comply with the requirements of Rule 4(h)(2) and the 120-day time limit of Rule 4(m). Plaintiffs fail to show good cause for their failure to even attempt to serve these Brazilian defendants in an authorized manner.[10] See Weston Funding, 451 F. Supp. 2d at 591 ("Good cause to excuse deficient service generally requires proof of 'exceptional circumstances' that were 'beyond [the plaintiff's] control.'" (quoting Sleigh v. Charlex, Inc., No. 03 Civ. 1369(MBM), 2004 WL 2126742, at *4 (S.D.N.Y. Sept.14, 2004))).

Accordingly, jurisdiction over Itau and Pfizer Brazil has not been obtained.[11]

---

[10] Plaintiffs argue that proper service by letters rogatory would be time consuming and expensive. (See Pls.' Resp. at 12-13.) These practical obstacles, even if they exist, do not supply good cause for failing to comply with the law. See J.B. Custom, 2011 WL 2199704 at *6 ("[E]ven if I were to presume that it remains difficult to obtain service in Brazil via letters rogatory, . . . I will not override the laws a sovereign state like Brazil just because they are perceived to be slow or difficult. . . . For me to impose by fiat a rule allowing service on Brazilians in a manner that Brazil has apparently resisted for decades would be to side-step the State department and its role in negotiating with the sovereign state of Brazil.").

[11] Plaintiffs argue that Itau has waived its objections to service of process. (See Pls.' Resp. at 9-11.) Itau did not. The Scheduling Order, dated March 12, 2014, expressly states: "Defendants, having not yet answered or moved with respect to the complaint, reserve all rights, defenses and objections, (including objections to jurisdiction) in submitting this proposed schedule, none of which are waived." (ECF No. 11 (emphasis added).) Itau further objected to the Court's jurisdiction and service in correspondence with the Court (ECF Nos. 13, 18, 33, and 45) and in responses to plaintiffs' discovery requests (ECF No. 22-2). Itau then included its objection to jurisdiction and service in its first responsive pleading, namely the motion to dismiss. See Mattel, Inc. v. Barbie-Club.com, 310 F.3d 293, 307 (2d Cir. 2002) ("[T]o preserve the defense of lack of personal jurisdiction, a defendant need only state the defense in its first responsive filing and need not articulate the defense with any rigorous degree of specificity."); Grammenos v. Lemos, 457 F.2d 1067, 1070 (2d Cir. 1972) ("A party can file a general appearance and object to personal jurisdiction or venue at any time before the answer is filed or in the answer."). But see Datskow v. Teledyne, Inc., Cont'l Products Div., 899 F.2d 1298, 1303 (2d Cir. 1990) ("A delay in challenging personal jurisdiction by motion to dismiss has resulted in waiver, even where, as here, the defense was asserted in a timely answer.").

    The cases that plaintiffs cite to support their waiver argument are inapposite. In particular, in Santos, unlike here, the defendant failed to include its objection to service of process in its first

B. <u>Pfizer Global and Pfizer, Inc.</u>

The Complaint fails to state a claim for declaratory relief against Pfizer Global and Pfizer, Inc. under the pleading standard set forth in <u>Iqbal</u> and <u>Twombly</u>. The Complaint does not plead any "factual content that allows the court to draw the reasonable inference," <u>Iqbal</u>, 556 U.S. at 678, that these defendants are proper parties in this action. Specifically, the Complaint fails to allege any plausible fact from which the Court might infer that these defendants have rights under any contract for the carriage of the cargo at issue. Cf. <u>Abraham Zion Corp. v. Lebow</u>, 761 F.2d 93, 103 (2d Cir.1985) (a non-signatory to a contract was not bound by a contract where the party who signed the contract was not the non-signatory's agent); <u>Crabtree v. Tristar Auto. Grp., Inc.</u>, 776 F. Supp. 155, 166 (S.D.N.Y.1991) ("It is hornbook law that a non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract.").

The sole reference to Pfizer Global in the Complaint is in paragraph 8, which states only that "Defendant Pfizer Global Trading is, upon information and belief, a

---

responsive pleading. See <u>Santos v. State Farm Fire & Cas. Co.</u>, 902 F.2d 1092, 1095-96 (2d Cir. 1990) ("Neither the original answer nor the amended answer did anything more than baldly state that the court lacked personal jurisdiction over State Farm. There was no mention of service of process at all, much less a specification of the manner in which service was insufficient."). And in <u>Datskow</u>, the defendant did not raise a defense based on defective service of process at a court conference before the statute of limitations on plaintiffs' claim expired. <u>Datskow</u>, 899 F.2d at 1303 ("Defendant attended the conference with the magistrate and participated in scheduling discovery and motion practice. Nothing was said about defective service of process. . . . [T]he limitations period on the wrongful death claims had not yet run at the time of this conference, and it would have been simple for plaintiffs to have made personal service on the defendant if the point had been mentioned."). Unlike the defendant in <u>Datskow</u>, Itau raised its jurisdictional defenses prior to the initial pretrial conference, as discussed above.

foreign corporation with offices in Ireland."[12] (Compl. ¶ 8.) References to Pfizer, Inc. are also few: the Complaint states only that Pfizer, Inc. is "a Delaware corporation with its principal place of business in New York," (Compl. ¶ 7), and that it is "a signatory to the Master Service[s] Agreement," (Compl. ¶ 3; see also id. ¶ 10). The remainder of the Complaint is peppered with broad, loose references to "Pfizer" or "the Pfizer Defendants." The Complaint alleges that "the Pfizer Defendants" hired plaintiffs to transport the subject cargo, that "Pfizer" partially rejected the shipment when it arrived, and that "Pfizer" then interposed a claim for the value of the damaged goods. (Compl. ¶¶ 11, 13, 14.) These broad assertions are largely contradicted by documents directly or indirectly referenced in the Complaint. Most saliently, Pfizer, Inc. was not named as a party to the Air Waybill # 2BL1193, (see ECF No. 31-1), despite the Complaint's broad allegation that "DGF issued Airwaybill #2BL1193 naming the Pfizer Defendants as parties thereto." (Compl. ¶ 11 (emphasis added).) Moreover, the document effectuating the subrogation to which the Complaint refers shows that Itau paid an insurance claim for the damaged cargo to Pfizer Brazil, the consignee listed on the Air Waybill, not to Pfizer or Pfizer Global, and that, in exchange, Pfizer Brazil subrogated to Itau all rights to recover the loss. (See ECF No. 31-2.)

---

[12] The Complaint alleges that the Master Services Agreement binds all Pfizer affiliates (Compl. ¶ 2 n.1), but Pfizer Global's name does not, at least explicitly, appear in that Agreement. (See ECF Nos. 52-2, 52-3.) Likewise, that Pfizer Global is listed as shipper in the Air Waybill, even if alleged in the Complaint (it is not), is insufficient to meet the Iqbal/Twombly pleading standard. The Complaint does not allege that Pfizer Global has any rights to proceed against plaintiffs for the losses from the cargo partially rejected by Pfizer Brazil. These rights belong to Itau under the subrogation agreement between Pfizer Brazil and Itau.

14

The Complaint also broadly alleges that "Pfizer has interposed a claim for full value (in excess of $1.6 million dollars) against the DGF Plaintiffs," (Compl. ¶ 14), but plaintiffs effectively concede in their opposition brief that it was Itau that sued them for damages. (See Pls.' Resp. at 12 ("ITAU has rushed to the Court house in Brazil seeking an adjudication outside of the master agreement in that forum."); see also Pfizer Defendants' Reply at 2, ECF No. 53 ("Consistent with their rights as subrogee, Itau filed a claim for damages against Plaintiffs in the Sao Paulo City, Brazil Court of Justice on November 13, 2013.").) There is no plausible factual allegation that any Pfizer entity sued (or even could sue) plaintiffs for damages arising out of the shipment at issue.

Plaintiffs' assertion that Pfizer, Inc. is a signatory to the Master Services Agreement is insufficient, without more, to state a claim against Pfizer, Inc. The Complaint does not allege that Pfizer, Inc. contracted with plaintiffs for the transportation of the particular shipment at issue, or that Pfizer, Inc. has filed any claim against plaintiffs regarding the shipment. Moreover, Pfizer Brazil has subrogated to Itau all rights to bring any such claim. See In re Mission Constr. Litig., Nos. 10 Civ. 4262(LTS)(HBP), 10 Civ. 9344(LTS)(HBP), 11 Civ. 1565(LTS)(HBP), 2013 WL 4710377, at *18 (S.D.N.Y. Aug. 30, 2013) ("Subrogation . . . 'allows an insurer to stand in the shoes of its insured and seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse.'" (quoting Reade v. Reva Holding Corp., 818 N.Y.S.2d 9, 13 (N.Y. App. Div. 2006))). The fact that Pfizer, Inc. is a signatory to a master services

agreement does not give Pfizer, Inc. an interest in a declaratory judgment action involving rights that have been fully subrogated to Itau by Pfizer Brazil.

Accordingly, the Court cannot infer even "the mere possibility," Iqbal, 556 U.S. at 678, that Pfizer Global and Pfizer are somehow proper parties to this declaratory judgment action. The Complaint is hereby dismissed as to these defendants pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[13]

IV. CONCLUSION

Both motions to dismiss (ECF Nos. 29, 50) are GRANTED. Plaintiffs' motion for partial summary judgment (ECF No. 38) is DENIED as moot. This action is dismissed without prejudice. The Clerk of Court is directed to terminate the motions at ECF. Nos. 29, 38, and 50, and to terminate this action.

SO ORDERED.

Dated:   New York, New York
         October 14, 2014

                                        /s/ K. B. Forrest
                                        _____
                                        KATHERINE B. FORREST
                                        United States District Judge

---

[13] In a footnote, plaintiffs request leave to amend their Complaint in case the Court "were to consider a dismissal on the basis of a 12(b)(6), or otherwise dismiss the action against any of the Pfizer Defendants for a lack of justiciable stake." (Pls.' Resp. at 5 n.3.) Plaintiffs request leave to amend to add claims about how the outcome of this declaratory action would impact "the Pfizer Defendants" and "the future dealings of the Pfizer and DHL entities." (Id. at 4, 5 & n.3.) The request for leave to amend to add these claims is DENIED.

16